## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| **ROSE ANN RHODES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:12-05560** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security

denying Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social

Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the Court on the parties'

cross-Motions for Judgment on the Pleadings. (Document Nos. 12 and 13.) Both parties have

consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 4 and 5.)

The Plaintiff, Rose Ann Rhodes, (hereinafter referred to as "Claimant"), filed an application

for DIB on July 22, 2009 (protective filing date), alleging disability as of December 31, 2006, due to

"severe pain in neck, back and shoulders, headaches, arms go numb, rib cage on right side messed up,

hearing problems, hips go out, irritable bowel syndrome, knees lock up, left heel is numb, pain in both

feet, broken tailbone, fibroids, endometriosis, stomach problems, bipolar [disorder], [and] no thyroid."[1]

(Tr. at 10, 133, 134-37, 138, 172.) The claim was denied initially and on reconsideration. (Tr. at 10,

74-75, 79-81, 84-86.) On May 7, 2010, Claimant requested a hearing before an Administrative Law

---

[1] On May 23, 2008, Claimant filed a prior application for DIB, alleging disability as of
March 1, 2007. (Tr. at 10.) The claim was denied initially and on reconsideration. (*Id.*) A hearing
was held on April 17, 2009, that resulted in an unfavorable decision issued on June 22, 2009, by
another ALJ, with no further appeal. (*Id.*)

Judge (ALJ). (Tr. at 87-88.) The hearing was held on March 2, 2011, before the Honorable James J. Kent. (Tr. at 23-61.) By decision dated March 11, 2011, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 10-22.) The ALJ's decision became the final decision of the Commissioner on August 20, 2012, when the Appeals Council denied Claimant's request for review. (Tr. at 1-4.) On September 19, 2012, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2011). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v.

Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2011). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2) (2011).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since her alleged onset date, December 31, 2006, through her date last insured of June 30, 2010. (Tr. at 12, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "cervical, lumbar, and thoracic sprain; right shoulder pain; panic attacks; and depression," which were severe impairments. (Tr. at 12, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 15, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity for less than a full range of light work, as follows:

> [T]hrough the date last insured, the [C]laimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The [C]laimant would never be able to climb ladders, ropes or scaffolds or ramps and stairs. She could only occasionally be able to balance, stoop, kneel, crouch and crawl. She would have to avoid concentrated exposure to extreme heat and cold, environmental irritants such as fumes, odors, dust and gases. She would have to avoid concentrated use to moving machinery and unprotected heights. The [C]laimant is able to understand, remember and carry out normal instructions and is able to make judgments on everyday work-

related decisions. She is able to interact appropriately with supervisors and co-workers in routine work settings. She is able to respond to usual work situations and changes in a routine work setting.

(Tr. at 16, Finding No. 5.) At step four, the ALJ found that through her date last insured, Claimant was capable of performing her past relevant work as a retail clerk and an order clerk. (Tr. at 20, Finding No. 6.) Although the ALJ found that Claimant was capable of performing past relevant work, the ALJ further found at step five, on the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, that Claimant could perform jobs such as a file clerk, mailroom clerk, and an assembler, at the light level of exertion. (Tr. at 20-21.) On these bases, benefits were denied. (Tr. at 20-22, Finding No. 7.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by

6

substantial evidence.

Claimant's Background

Claimant was born on September 19, 1968, and was 42 years old at the time of the administrative hearing, March 2, 2011. (Tr. at 21, 27-28, 134.) Claimant had at least a high school education and was able to communicate in English. (Tr. at 21, 28, 171, 179-80.) In the past, she worked as a retail clerk and an order clerk. (Tr. at 20, 55-56, 160-67, 172-74.)

 Claimant's Challenges to the Commissioner's Decision

Claimant first alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in not giving controlling weight to the opinion of her treating source, Dr. Joan Worthington, D.O. (Document No. 12 at 23-24.) Claimant asserts that the ALJ gave greater weight to the opinions of Drs. Franyutti and Lateef, the non-examining, state agency physicians who were not able to review all the evidence of record. (Id.)

In response, the Commissioner first asserts that given Dr. Worthington's limited, or questionable, relationship with Claimant, the ALJ was entitled to give her opinion less weight. (Document No. 13 at 13-14.) Second, the Commissioner asserts that Dr. Worthington's assessment was submitted solely in support of Claimant's claim for disability benefits. (Id. at 14.) She notes that Claimant went to her office on June 2, 2010, to have paperwork filled out for social security disability. (Id.) The Commissioner asserts that Dr. Worthington's records do not include results from any objective diagnostic clinical testing to support her extreme limitations, and that her limitations in many instances, appear based on Claimant's subjective reports. (Id. at 15.) Third, the Commissioner notes that a few weeks prior to Dr. Worthington's assessment, she noted that Claimant had full range of motion and normal muscle strength. (Id.) Additionally, Dr. Nutter noted a normal gait, good grip strength, an absence of muscle spasm, negative straight leg raise testing, and an ability to heel and toe

walk. (Id.) Moreover, records from Raleigh General Hospital and Dr. Rahim indicated full range of motion in her extremities. (Id.) Finally, the Commissioner notes that diagnostic imaging consistently showed no objective abnormal findings. (Id. at 16.) The Commissioner therefore, asserts that the ALJ's decision to give less weight to Dr. Worthington's opinion is supported by the substantial evidence of record. (Id.)

Claimant also alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing Claimant's pain and credibility. (Document No. 12 at 24-25.) Claimant asserts that the ALJ failed to consider that much of her pain is attributable to her upper extremities and migraine headaches. (Id. at 24.) She also asserts that the ALJ improperly relied on certain activities to indicate that she is able to perform sustained work activity. (Id.) Claimant further asserts that the ALJ failed to consider all the factors set forth in the Regulations in considering her pain and credibility. (Id.)

In response, the Commissioner asserts that the ALJ correctly assessed Claimant's subjective complaints and reasonably concluded that she was not completely credible and that her symptoms would not prevent her from performing a reduced range of light work. (Document No. 13 at 16-18.) The Commissioner asserts that contrary to Claimant's allegations, the ALJ considered more than Claimant's daily activities in reaching his conclusions. (Id. at 17.) The Commissioner notes that the ALJ considered Claimant's testimony regarding pain in her arms, hands, hips, legs, and toes, but found that the evidence failed to support her testimony. (Id.) Specifically, Dr. Nutter ruled out radiculopathy and muscle spasms. (Id.) Dr. Rahim noted full range of motion without pain or discomfort, and Ms. England, P.A., advised that the MRI results revealed no abnormality of the neck or back. (Id.) Ms. Campbell-Cline, P.A., reported Claimant had no musculoskeletal symptoms, and Dr. Worthington found normal muscle strength in the upper extremities. (Id.) Claimant complained of problems with

gripping but Dr. Nutter noted that she could make a fist bilaterally and testing at RGH revealed bilateral intact grip strength. (Id.) Claimant testified to insomnia and medication side effects, but the Commissioner asserts that the evidence does not support such complaints. (Id. at 18.) The Commissioner further asserts that the ALJ noted that Claimant's conservative medication regimen failed to indicate that she could not perform light work. (Id.) The Commissioner therefore, asserts that the ALJ's pain and credibility assessment is supported by substantial evidence. (Id.)

Finally, Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in posing a hypothetical question to the Vocational Expert ("VE") that included limitations for Claimant's carpal tunnel syndrome and fatigue. (Document No. 12 at 25-27.)

In response, the Commissioner asserts that the ALJ's hypothetical question to the VE fairly set out all of Claimant's impairments and the VE's response was relevant and helpful to the ALJ's decision. (Document No. 13 at 18-19.) The Commissioner notes that the only instance in which the VE opined that Claimant was unable to work was when Claimant's attorney asked him to include all of Dr. Worthington's limitations, which the ALJ reasonably discounted. (Id. at 18-19.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will summarize it below in relation to Claimant's arguments.

Analysis.

1. Treating Physician Opinion.

Claimant first alleges that the ALJ erred in not giving controlling weight to the opinion of her treating physician, Dr. Worthington. (Document No. 12 at 23-24.) Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2011). These factors include: (1) length of the treatment relationship and frequency of

evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency medical or psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2011). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2) (2011). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2011). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2011). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

In the instant matter, Dr. Worthington completed a form Medical Assessment of Ability to Do Work-Related Activities (Physical), dated June 2, 2010, on which she opined that Claimant was capable of lifting and carrying five to ten pounds occasionally with the right hand and 15 to 20 pounds with the left, and five pounds frequently with the right hand and 15 pounds with the left hand. (Tr. at 435-38.) This assessment was based on Claimant's "symptomatic report" of an inability to carry objects in her right hand, with symptoms of carpal tunnel syndrome. (Tr. at 435.) Dr. Worthington opined that Claimant was able to stand, walk, or sit for two hours total at 15 minute increments, with frequent changes of position. (Tr. at 436.) Dr. Worthington assessed occasional postural limitations, environmental limitations, and limitations in reaching, handling, feeling, and pushing and pulling. (Tr. at 436-37.) In conclusion, Dr. Worthington noted that Claimant has frequent migraine headaches and

panic attacks that would make it difficult for her to maintain consistent employment. (Tr. at 438.) Dr. Worthington stated that her opinions were based on Claimant's subjective reports. (Tr. at 435-38.)

The medical record appears to contain six treatment notes from Dr. Worthington. Treatment notes indicate that on September 21, 2009, Claimant was seen on a follow-up appointment for complaints of chest and head congestion, a productive cough, aches, and a three-week history of headaches. (Tr. at 397.) Dr. Worthington assessed acute sinusitis and acute bronchitis, prescribed medications, and adjusted her Synthroid to treat her thyroid condition. (Id.) On October 21, 2009, Claimant was seen for a one month medicine and sick follow-up and she requested new braces for her wrists and left ankle. (Tr. at 379-80.) Claimant reported pain in both wrists with associated carpal tunnel syndrome ("CTS"), and indicated that the pain and numbness in her hands had increased. (Tr. at 379.) She reported that the left ankle pain that was associated with her 2006 motor vehicle accident had increased but was not associated with activity, and sometimes was worse when inactive. (Id.) She also reported that her foot was turning inward a little. (Id.) Physical exam revealed positive Tinel's sign bilaterally and positive Phalen's sign. (Tr. at 380.) Dr. Worthington noted that Claimant's left ankle tended to turn in and that there was increased inversion of the left ankle compared to the right. (Id.) Claimant had full back range of motion. (Id.) Dr. Worthington assessed wrist and ankle joint pain, earache, and CTS. (Id.)

On January 21, 2010, Dr. Worthington assessed hypothyroidism, and on March 12, 2010, she refilled Claimant's prescription for Synthroid and Ibuprofen 800mg. (Tr. at 378.) Treatment notes indicate that on May 19, 2010, Claimant reported body pain from her neck to ankles, resulting from a motor vehicle accident in 2006. (Tr. at 451.) She reported increased left hip pain, numbness and tingling in her hands, headaches that were relieved only by sleeping in a darkened room, and that she was diagnosed with COPD by Dr. Hasan. (Id.) Physical exam revealed normal and symmetric muscle

strength of the upper extremities with the exception of decreased strength with finger adduction on the right, right upper trapezius tenderness, positive Tinel's sign on the right, positive Phalen's sign bilaterally, painful left internal hip rotation but full range of motion, full range of ankle motion with a slight decrease on the left ankle, and painful forward bending. (Tr. at 451.) Dr. Worthington diagnosed CTS, generalized anxiety disorder, panic disorder without agoraphobia, and panic disorder associated with psychological factors and general medical condition. (Tr. at 452.)

On June 2, 2010, Claimant presented to Dr. Worthington with paperwork to be filled out for disability. (Tr. at 448.) Claimant reported that her left hand bothered her some and that she could lift about ten pounds with her right hand and could perform normal lifting with her left hand. (Id.) She complained of tingling and numbness in her hands, right greater than left, with pain shooting up and down her right arm. (Id.) She indicated that her right shoulder felt disconnected but that she could raise her arms. (Id.) Claimant also reported pain from her neck down her back with headaches stemming from the neck pain. (Id.) She reported tinnitus. (Id.) Claimant reported trouble walking and standing and felt that she would have to sit every 15 minutes while at work, either from back pain or left ankle pain. (Id.) Claimant indicated that she could walk or sit for a total of two hours, but would need to rise from a sitting position every 30 minutes. (Id.) Claimant stated that she could crawl on her knees but that her knees swelled at times, that she had balance problems, that she had trouble reaching with her right arm, and that she was afraid of height. (Id.) Physical exam revealed decreased range of motion of the shoulders, cervical spine, ankles, and feet. (Tr. at 449.)

On January 14, 2010, Dr. Fulvio R. Franyutti, M.D., a state agency, reviewing, medical consultant, completed a form Physical RFC Assessment. (Tr. at 368-75.) Dr. Franyutti opined that Claimant's chronic cervico-thoraco-lumbar strain, hypothyroidism, sinusitis, and bronchitis rendered her capable of performing light exertional level work with occasional postural limitations except that

she could never climb ladders, ropes, or scaffolds. (Tr. at 368-69.) Additionally, he opined that Claimant should avoid concentrated exposure to temperature extremes, environmental irritants, and hazards. (Tr. at 372.) Dr. Franyutti also submitted a Case Analysis statement on which he stated that he agreed with the ALJ's June 22, 2009, decision in which he assessed a light RFC. (Tr. at 377.)

On April 26, 2010, Dr. Atiya Malik Lateef, M.D., a state agency reviewing medical consultant, completed a Case Analysis on which he indicated that he reviewed Dr. Franyutti's RFC Assessment and that he affirms his decision. (Tr. at 418.)

In his decision, the ALJ gave no weight to Dr. Worthington's opinion because he "disagrees with the limitation in reaching, handling, feeling and pushing and pulling." (Tr. at 19-20.) The ALJ additionally found that the mental limitations were beyond Dr. Worthington's area of expertise. (Tr. at 20.) The ALJ, however, gave significant weight to the opinions of the state agency consultants, Drs. Franyutti and Lateef. (Tr. at 19.) Despite the ALJ's limited explanation as to the weight he assigned the various opinions of record, it is undisputed that Dr. Worthington based her opinion almost entirely on Claimant's subjective reports, as she stated in her opinion, which was rendered for the purposes of Claimant's claim for disability. (Tr. at 435-39.) This reliance also is evidenced by Dr. Worthington's treatment note of June 2, 2010, which consists primarily of Claimant's subjective reports of limitations. (Tr. at 448-49.) In her opinion, Dr. Worthington assessed extreme limitations in walking, standing, sitting, lifting and carrying, performing postural activities, and performing manipulative activities. (Tr. at 435-37.) However, on May 19, 2010, Claimant's last visit prior to her issuing her opinion, Dr. Worthington noted on physical exam that Claimant essentially had normal upper extremity muscle strength, full range of hip motion with the exception of some pain, and full range of ankle motion. (Tr. at 451.) Although Claimant was diagnosed with CTS, Dr. Nutter, M.D., who conducted an internal medicine exam on August 29, 2008, observed that despite some tenderness, Claimant was able to make

14

a fist bilaterally, was able to squeeze his hands equally well, was able to write and pick up coins with either hand without difficulty, and had 5/5 grip strength bilaterally. (Tr. at 260.) Dr. Nutter also observed that Claimant had some range of motion abnormalities of the cervical and lumbar spine, but was able to walk with a normal gait and without any handheld assistive device. (Tr. at 259-61.) On December 4, 2009, Dr. Rahim, M.D., conducted an evaluation of Claimant and observed that she had full range of motion of her musculoskeletal joints without any pain or discomfort. (Tr. at 344.) He noted that she had complete flexion and good lateral bending of her cervical spine and lumbosacral spine. (Tr. at 345.) Additionally, diagnostic tests essentially were negative. The MRI of Claimant's lumbosacral spine on August 17, 2008, was reported as normal. (Tr. at 396, 409, 411.) The September 16, 2008, MRI of her right shoulder revealed only mild tendonopathy. (Tr. at 407-08.)

In view of the foregoing, the Court finds that the ALJ's decision to accord no weight to Dr. Worthington's opinion is supported by the substantial evidence of record. Her opinion was based almost entirely on Claimant's subjective reports, which were not entirely consistent with the objective evidence of record as a whole. Although the state agency consultants' opinions were rendered prior to the submission of all the evidence of record, their opinions remain consistent with the evidence of record, as set forth in the ALJ's RFC assessment. Accordingly, the Court finds that the ALJ's decision to give the state agency consultants' opinions greater weight is supported by the substantial evidence of record.

2. Pain and Credibility Assessment.

Claimant further alleges that the ALJ erred in assessing her pain and credibility. (Document No. 12 at 24-25.) A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b)

and 416.929(b) (2011); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated.  Id. at 595.  When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.  20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2011).  Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons.  . . .  Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour,

16

sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2011).

SSR 96-7p repeats the two-step regulatory provisions:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities.

17

20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 17.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 17.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 17-20.) At the second step of the analysis, the ALJ concluded that "the [C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 17-18.)

In assessing Claimant's pain and credibility, the ALJ summarized Claimant's testimony, including her reports of left ankle numbness, constant neck and head pain, constant back strain and hip

pain, hand numbness, and that her hips gave out, and muscle spasms. (Tr. at 17.) She indicated that her pain was constant and radiated down to her toes. (Id.) Claimant stated that she had limited neck motion. (Id.) Claimant testified that she saw her examining physicians every couple of months. (Id.) She further testified that she could stand for 30 minutes on a good day and for five minutes on a bad day, could walk on level ground but not uphill, and possibly could lift a five pound bag of sugar. (Id.) Claimant testified that she suffered from daily migraines, was diagnosed as bipolar, had mood swings and crying spells, and COPD. (Id.)

Despite Claimant's complaints of muscle spasms, the medical evidence fails to support her claims on examination by Dr. Nutter or Dr. Rahim. (Tr. at 18, 261, 345.) Dr. Rahim observed full range of motion of the musculoskeletal joints without any pain or discomfort (Tr. at 18, 344.), complete flexion and good lateral bending of the cervical and lumbosacral spine, and that Claimant was able to walk on her heels and toes and squat without any difficulty. (Tr. at 18, 345.) Dr. Worthington noted that she normal and symmetric muscle strength in her upper extremities. (Tr. at 451.) Although Claimant was diagnosed with CTS and complained of difficulty gripping, it was noted by Dr. Nutter that she was able to make a full fist and had full grip strength on August 29, 2008 (Tr. at 260.), and on September 30, 2008, Dr. Hasan noted at Raleigh General Hospital that Claimant had full range of motion of her extremities and that her grip strength was equal and intact bilaterally. (Tr. at 267.)

The ALJ also considered Claimant's reported activities of daily living. (Tr. at 17.) Claimant reported her activities to have included doing the dishes and vacuuming, cooking simple meals, washing her clothes at the laundromat, playing on the computer, keeping her grandchildren at times, and going to the lake at times. (Id.) The ALJ therefore, considered Claimant's reported limitations and activities and concluded that Claimant's activities were "not limited to the extent one would expect

given the complaints and consistent exaggeration of her disabling symptoms and limitations." (Tr. at 19.)

The ALJ also summarized the medical evidence of record, including Claimant's various treatment and medications for her impairments, including the opinion evidence. (Tr. at 18-20.) The ALJ noted that Claimant did not take any narcotic based pain relieving medications and that she reported having taken Ibuprofen 800mg twice a day for pain. (Tr. at 19.) Though the ALJ did not focus upon Claimant's migraines as she alleges, the ALJ noted that Claimant took only Ibuprofen 800mg twice a day for pain. (Id.) At the administrative hearing, Claimant testified that she suffered from migraines on a daily basis since her motor vehicle accident on March 23, 2006, and that she had to cover her eyes and go to sleep to get rid of them. (Tr. at 46.) She testified that she took the Ibuprofen 800mg for the migraine headaches, and for other pain, too. (Id.) Thus, the ALJ implicitly discounted the severity of the headaches in that she controlled them with only Ibuprofen. (Tr. at 19.) Despite Claimant's reports of migraines, the May 13, 2003, MRI of her brain was negative. (Tr. at 413.) The record reflects her reports of headaches, but no treatment for them or any indication in the record that she otherwise was limited by them.

Accordingly, the Court finds that the ALJ assessed Claimant's pain and credibility pursuant to the factors set forth in the Regulations and finds that the ALJ's decision is supported by the substantial evidence of record. Though Claimant clearly suffers from pain, the medical evidence demonstrates that it is not as disabling as the Claimant alleged.

3. VE Testimony.

Finally, Claimant alleges that the ALJ erred in failing to pose a hypothetical question that included all of Claimant's impairments. (Document No. 12 at 25-27.) Specifically, Claimant asserts that the ALJ failed to include limitations regarding her CTS and fatigue. (Id. at 26.) To be relevant or

20

helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

The ALJ posed two hypothetical questions to the VE. The first hypothetical question set forth the limitations as assessed by the ALJ in his RFC assessment. (Tr. at 56-57.) The VE responded that such a person could perform Claimant's past relevant work and could perform the additional jobs of a mail room clerk, file clerk, and an assembler, all unskilled jobs, performed at the light exertional level. (Tr. at 57.) The second hypothetical question set forth limitations similar to those assessed by Dr. Worthington. (Tr. at 57-58.) The ALJ asked the VE to assume an individual the same age and with the same education and work experience as Claimant, who was limited to sedentary work, lifting five pounds with her right hand and occasionally up to 15 pounds with her left hand, was able to stand or walk for 30 minutes, was able to sit for three hours and required a sit-stand alternative every 15 minutes, had the same postural limitations, and had manipulative limitations to include occasional limitations in bilateral reaching, overhead reaching, handling, gross manipulation, and fingering. (Tr. at 57-58.) Additionally, she would be limited to even moderate exposure to extreme cold and heat, humidity, noise, vibration, environmental irritants, moving machinery and heights, and would be

21

limited to occasional interaction with the public and co-workers, and due to migraines and panic attacks would be absent from work five to seven days a month. (Tr. at 58.) The VE testified that no jobs would be available. (Id.) Upon questioning by counsel, who specifically referred to Dr. Worthington's assessment, the VE testified that no work was available. (Tr. at 59.)

Contrary to Claimant's allegation, the ALJ incorporated Claimant's CTS and migraines in a hypothetical question to the VE, but declined to adopt Dr. Worthington's opinion, and therefore, was not required to find that Claimant was disabled based on the VE's testimony. The VE's testimony regarding Dr. Worthington's opinion therefore, was not supported by the record as the ALJ properly discounted her opinion. Accordingly, the Court finds that the ALJ properly included all of the limitations supported by the record in the hypothetical questions posed to the VE and that his decision is supported by the substantial evidence of record.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence.  Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 12.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 13.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court..

The Clerk of this Court is directed to transmit a copy of this Memorandum Opinion to counsel of record.

ENTER: March 31, 2014.

R. Clarke VanDervort
United States Magistrate Judge